**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**FRANK SIVORI**                                                                                  **PLAINTIFF**

**V.**                                                                      **CIVIL ACTION NO. 2:07cv79-MTP**

**CHRISTOPHER EPPS, et al.**                                                               **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

This cause came on to be heard for a bench trial before the undersigned United States

Magistrate Judge on February 10, 2009.  The Plaintiff appeared *pro se*, and Charles Irvin, Pelicia

Hall, and Leonard Vincent appeared on behalf of the Defendants.  The court having heard the

arguments of the parties and considered all the evidence, finds that Plaintiff is entitled to

injunctive relief and nominal damages for his Eighth Amendment claim against Defendants for

exposure to unreasonable levels of secondhand smoke.  All other remaining claims should be

dismissed.

FACTUAL BACKGROUND

Plaintiff Frank Sivori is currently incarcerated at the South Mississippi Correctional

Institution ("SMCI") after having been convicted of three counts of attempted aggravated assault

in Hinds County, Mississippi.  Plaintiff, proceeding *pro se* and *in forma pauperis*, filed his

Complaint [1] on or about April 17, 2007, pursuant to 42 U.S.C. § 1983 against the following

Defendants: Christopher Epps, Emmit Sparkman, Ron King, Larry Hardy, James Johnson, Dr.

Kentrell Liddell, Alicia Box, and Jeanne Kirkwood.  Plaintiff filed an Amended Complaint [9]

on June 19, 2007.  Alicia Box was dismissed from this action by Order [10] dated June 25, 2007;

James Johnson was dismissed by Order [63] dated August 22, 2008.  Larry Hardy could not be

served with process at the address provided by Plaintiff, and is not before the court.  *See* Return

Summons [25] (with notation "no longer employed by MDOC").

Through his complaint and amended complaint, and as clarified during his *Spears*[1] hearing, Plaintiff claims he is being exposed to unreasonable levels of secondhand smoke at SMCI. He claims that Defendants are in violation of the Mississippi Clean Indoor Air Act ("MCIAA") (House Bill 123),[2] Mississippi Department of Corrections ("MDOC") Policy 25-05-F,[3] and the Eighth Amendment to the U.S. Constitution. Plaintiff also alleges a claim for mail censorship in violation of the First Amendment and MDOC Policy 31-01 against Defendant Jean Kirkwood.

Plaintiff seeks the following relief: to be housed in a non-smoking unit; an order directing the MDOC to follow state law and eliminate smoking inside its facilities; $25,000 in punitive damages; nominal damages ($1.00); compensatory damages for future health damage caused by exposure to secondhand-hand smoke; court costs; and attorneys' fees. *See* Complaint [1] at 55-56; *Spears* hearing.

The court set this matter for a bench trial on February 10, 2009.[4] During the trial, Plaintiff's evidence consisted of his own testimony, and the testimony of Defendant Dr. Kentrell Liddell, Defendant Ron King, Defendant Jeanne Kirkwood, Officer Karen Causey, and Inmate Jeffrey Wansley. Additionally, Plaintiff submitted several cumulative exhibits as evidence. *See*

---

[1]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing occurred on August 22, 2008. *See* Docket Entry dated August 22, 2008.

[2]The Mississippi Clean Indoor Air Act (House Bill 123) generally prohibits smoking inside government buildings. *See* Miss. Code Ann. § 29-5-161; Ex. P-5.

[3]MDOC Policy 25-05-F provides that the MDOC shall provide a "smoke-free environment for inmates inside the facility units." *See* Ex. P-10.

[4]No dispositive motions were filed.

2

Exhibit List [103].  The Defendants presented testimony from Dr. Kentrell Liddell, as well as

documentary evidence.  *See* Exhibit List [104].

SUMMARY OF TRIAL TESTIMONY AND PROCEEDINGS

Jeffrey Wansley, an inmate currently incarcerated in Kemper-Neshoba County Regional

Correctional Facility testified as Plaintiff's first witness.  Mr. Wansley was previously housed at

SMCI from 2005 to August 2008, and for a portion of that time, he was incarcerated in

Plaintiff's housing unit, D-1.[5]  He stated that there were approximately 100 inmates housed in his

zone before he was transferred, and that the inmates smoked all day and all night in their bunks

and all over the zone, including the bathroom, television, and living areas.  He stated that the

designated smoking area was a "figment of someone's imagination" because both inmates and

correctional officers smoked everywhere.  Mr. Wansley testified that in the colder months, the

windows were closed and the ventilation fans were turned off about 85-90% of the time.  He also

testified that inmates would put sheets in front of the ventilation fans to keep cold air out, that

there was no circulation in the winter months, and one could see clouds near the ceiling from the

smoke.  He further stated that there were stains on the walls and the vents from the smoke.  Mr.

Wansley testified that before he left, "no-smoking" signs were posted in the back of the zone, but

no one abided by them.

Plaintiff next called Karen Causey, a correctional officer at SMCI, to testify.  She

testified that when she first arrived at SMCI in 2003, the capacity was 120 inmates; 60 inmates

per zone.  Currently there are approximately 200 inmates, and the facility has not been enlarged

---

[5]Mr. Wansley testified that he was housed in about four different units during his
incarceration at SMCI, including unit D-1.  He testified that all the buildings he was housed in
were designed exactly the same.

and the ventilation system has not been altered. She testified that there are approximately nine windows in each zone, and the inmates control the opening and closing of the windows. She testified that half the windows are open all the time, that there are fan vents and ceiling vents, and the officers control the fan vents. She stated that she has noticed sheets draped over the back exhaust fans. She stated that she and the other officers would instruct the inmates to take the sheets down, but they would put them right back up.

Officer Causey stated that she is familiar with the smoking policy at SMCI. She has noticed "no-smoking" signs in the zone. She testified that inmates smoke in the bathrooms, and that she has witnessed inmates smoking outside the designated smoking area. She stated that she would occasionally issue a Rule Violation Report ("RVR") when an inmate was caught smoking outside the designated area, but she could not recall the last time she issued an RVR for such a violation. She stated that she has never witnessed a cloud of smoke in the zone.

On cross-examination, Ms. Causey testified that Plaintiff's bed is about three to six inches from the smoking line (a painted line on the floor which separates the smoking and no-smoking areas). She stated that she tries to accommodate inmates' requests regarding the exhaust fans, but one of the fans is usually on at all times unless it is really cold. She testified that Plaintiff has never complained to her about secondhand smoke and has never asked her to be moved to another bed.

Plaintiff called Ron King, Superintendent of SMCI, as his next witness. Mr. King testified that he was vaguely familiar with the MCIAA, and was familiar with MDOC Policy 25-05-F. He testified that he is responsible for the overall operations and oversight of the enforcement of the rules at SMCI. He stated that to the best of his knowledge, the MCIAA and MDOC Policy 25-05-F were being enforced. He testified that smoking is not allowed inside

administration buildings, but is allowed in designated areas inside the prisoner quarters.

Mr. King testified that during visual inspections of the housing units, he has noticed sheets hanging over the exhaust vents, but has never noticed excessive amounts of smoke in the air and has never noticed stains on the walls or the vents. He testified that it is "quite possible" that he has received correspondence from Plaintiff asking to be housed in a smoke-free facility. He stated that if he had received such correspondence, he would have advised Plaintiff that state classification is responsible for housing assignments.

On cross-examination, Mr. King testified that Policy No. 25-05-F is a medical policy and only applies to medical units, and would not apply to Plaintiff's housing unit. *See* Ex. D-1. Mr. King testified that MDOC Policy No. DOC-20-10, which permits smoking in designated areas inside the housing units, applies to the general population at SMCI, including the unit where Plaintiff is housed. *Id.* He testified that Policy DOC-20-10 complies with American Correctional Association ("ACA") standards.

Mr. King testified that Plaintiff's housing unit has adequate exhaust and ventilation. He testified that there are windows by every bunk, there are two exhaust fans directly above the designated smoking area, and an exhaust fan at each end of the housing unit. He also testified that state classification determines when inmates should be transferred to another facility, and not he or Mr. Epps.

Finally, Mr. King testified that he, as SMCI Superintendent, is a member of the law enforcement community, and that the MDOC is a branch of law enforcement.

Dr. Kentrell Liddell, former MDOC Chief Medical Officer, was Plaintiff's next witness. Plaintiff questioned Dr. Liddell about the Surgeon General's Report "The Health Consequences

of Involuntary Exposure to Tobacco Smoke,"[6] admitted into evidence as Exhibit P-11.  Dr.

Liddell stated that she is vaguely familiar with the report.  When asked if she believed, in her

expert opinion, that involuntary exposure to tobacco smoke was a cause of disease including

lung cancer in healthy non-smokers, she stated that it could be one cause.  She further testified

that in her opinion, separating non-smokers from smokers in the same air space could reduce the

non-smokers' exposure to the smoke.  She testified that in general, it is safer for someone to not

be exposed to secondhand tobacco smoke.  She also testified that a heating and ventilation

system could possibly distribute secondhand smoke throughout an area.[7]

Plaintiff Sivori testified that he has been housed at SMCI since May 2005.  He testified

that he is a long-term chronic asthmatic and hepatitis C patient.  He is a non-smoker housed with

smokers.  He has brought to the Defendants' attention–verbally, informally, formally, through

the grievance system, etc.–  on many occasions his health problems due to exposure to

secondhand tobacco smoke and that he does not want to be housed with smokers as he believes it

is not conducive to his health.  The exposure to the secondhand tobacco smoke causes him to

have breathing trouble, sleeping trouble, and mucus build-up in his sinus cavities and lungs.  He

testified that the excessive amount of secondhand tobacco smoke is causing him serious

problems.

Plaintiff testified that 83 out of the 100 inmates housed in his unit smoke tobacco.  He

stated that the air vents only pull smoke from the front to the back of the room where the

---

[6]While the report was admitted into evidence, the underlining and notations made by
Plaintiff were not admitted.

[7]Plaintiff called Jeanne Kirkwood as his next witness.  However, the court will not
summarize her testimony since the court granted her motion for a directed verdict as discussed
below.  *See also* Order [107].

prisoners sleep.

On cross-examination, Plaintiff testified that he was diagnosed with asthma in 1982. He further testified that he has refused chronic care treatment twice.

At the close of Plaintiff's case-in-chief, Defendants moved for judgment as a matter of law as to all remaining claims. Plaintiff made no response to the motion. After a short recess, the court held that Defendants' motion should be granted in part and denied in part. *See* Order [107]. Specifically, the court held that Defendant Jean Kirkwood was entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 52(c) as to Plaintiff's claims against her for mail censorship in violation of the First Amendment and MDOC Policy 31-01.[8] The court further held that Defendants Emmitt Sparkman and Dr. Kentrell Liddell were entitled to judgment as a matter of law pursuant to Rule 52(c) as to Plaintiff's claims against them for exposure to unreasonable levels of secondhand smoke in violation of the MCIAA, MDOC Policy 25-05-F, and the Eighth Amendment. The court denied the remainder of Defendants' motion. The remaining claim against Defendants Ron King and Christopher Epps for exposure to unreasonable levels of secondhand smoke was not dismissed.

Defendants re-called Dr. Kentrell Liddell as their first and only witness. Dr. Liddell testified that from her review of the record, Plaintiff's asthma condition has not worsened during the time he has been housed at SMCI as opposed to other facilities. Dr. Liddell testified that during her visit to SMCI, she did not recall witnessing anything harmful, like a cloud of smoke. However, she testified that she did not walk through every building, and could not recall going to

---

[8]Because the court granted Defendants' motion for judgment as a matter of law in favor of Jeanne Kirkwood as to Plaintiff's claims against her for mail censorship in violation of the First Amendment and MDOC Policy 31-01, the court does not summarize the Plaintiff's or the other witnesses' testimony regarding this claim.

Unit D-1, Plaintiff's housing unit.

The court has thoroughly considered Plaintiff's allegations, and the testimony given by the Plaintiff and the other witnesses at trial. The court has also reviewed the exhibits admitted at trial and/or marked for identification. Based on the foregoing, the court concludes that Plaintiff is entitled to injunctive relief and nominal damages for his Eighth Amendment claim against Defendants for exposure to unreasonable levels of secondhand smoke, and that all other claims should be dismissed.

## ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983. However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability."). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983

violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304.

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice[9] of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). "Unlike the deliberate indifference standard applied to individual employees, this standard is an objective one; it considers not only what the policymaker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Id.*; *see also Hare v. City of Corinth*, 74 F.3d 633, 649 n.4 (5th Cir. 1996) (stating that when the plaintiff is attempting to hold a municipality liable for a constitutional violation, he "must show that the municipal employee's act resulted from a municipal policy or custom adopted or maintained with *objective* deliberate indifference" to the plaintiff's constitutional rights). "Therefore, constructive notice is adequate." *Lawson*, 286 F.3d at 264.

---

[9]"An 'official policy' for § 1983 purposes may be either a written policy or 'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Lawson v. Dallas County*, 286 F.3d 257, 263 (5th Cir. 2002) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)); *see also Richardson v. Oldham*, 12 F.3d 1373, 1381-82 (5th Cir. 1994) (stating that the Fifth Circuit has stated "that a municipal policy may be established by a persistent pattern of conduct as well as by a formal legal declaration").

Plaintiff's claim that Defendants failed to properly enforce the no-smoking policies, 25-05-F and DOC-20-10, fails to amount to a constitutional violation. *See Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (holding that the mere failure of a prison official to follow the prison's own regulation or policy does not amount to a constitutional violation)*; McGowan v. Peel*, No. 3:06cv659-DPJ-JCS, 2007 WL 710154, at *1-*2 (S.D. Miss. March 6, 2007). Rather, the primary issue is whether Defendants violated the Eighth Amendment of the U.S. Constitution.

In *Helling v. McKinney*, 509 U.S. 25, 35 (1993), the Supreme Court established a two-prong test to determine whether a claim for exposure to secondhand smoke, also known as environmental tobacco smoke ("ETS"), violates the Eighth Amendment. First, Plaintiff must show that he was exposed to unreasonably high levels of ETS. *Helling*, 509 U.S. at 35. Second, he must show that the prison officials acted with deliberate indifference to his situation. *Id.* This test involves both objective and subjective components. *Id.*

With respect to the first prong, Plaintiff must objectively "show that he himself is being exposed to unreasonably high levels of ETS." *Id.* Establishing the objective factor "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS." *Id.* at 36. "[S]poradic and fleeting exposure" to ETS does not constitute "unreasonably high levels," even if it is "unwelcome and unpleasant" and causes Plaintiff discomfort, such as nausea and coughing. *Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001). The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling*, 509 U.S. at 36.

For the second prong, Plaintiff must show that the prison officials were subjectively deliberately indifferent to his situation. *Id.*; *see also Richardson*, 260 F.3d at 498; *Callicutt v. Anderson*, 48 Fed. Appx. 916, 2002 WL 31114947, at *1 (5th Cir. Sept. 11, 2002) (stating that in order to succeed on an Eighth Amendment claim, plaintiff must show that he is exposed to unreasonably high levels of ETS and that the prison officials demonstrated deliberate indifference to his situation). In order to demonstrate deliberate indifference, Plaintiff must show that Defendants acted with "obduracy and wantonness, not inadvertence or error in good faith." *Callicutt*, 2002 WL 31114947, at *2 (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Courts should consider the following factors in evaluating deliberate indifference to ETS: "the adoption of a smoking policy; the administration of that policy; and 'the realities of prison administration.'" *Id.* (citing *Helling*, 509 U.S. at 36-37).

Based on the testimony and the evidence submitted at trial, the court concludes that Plaintiff has proven by a preponderance of the evidence the objective prong of the *Helling* test, "that he himself is being exposed to unreasonably high levels of ETS." *Helling*, 509 U.S. at 35. Plaintiff testified that approximately 83 out of the 100 inmates housed in his unit smoke tobacco products. Further, there was unrebutted testimony that the inmates smoke all day and night in their bunks and all over the zone, including the bathroom, television, and living areas.

Mr. Wansley testified that in the colder months, the windows were closed and the ventilation fans were turned off about 85-90% of the time. There is also unrebutted testimony that inmates sometimes place sheets in front of the ventilation fans to keep cold air out. While Mr. King testified that Plaintiff's housing unit had an adequate ventilation system, Plaintiff testified that the exhaust fans only pulled smoke from one end of the unit to the other. Further, the ventilation system cannot work if, as all parties testified, inmates routinely cover the fans

with sheets.

Plaintiff testified that he is a long-term chronic asthmatic, and that his exposure to secondhand smoke causes him to have breathing trouble, sleeping trouble, and mucus build-up in his sinus cavities and lungs. Plaintiff's medical records, as kept by the MDOC, reflect that he has "moderate" asthma. *See* Ex. P-12. The testimony reflects that Plaintiff's bed is three to six inches from the designated smoking area line. The designated smoking area is identified by a painted line on the floor of the unit, which "separates" the smoking and non-smoking areas. Thus, Plaintiff's bed is literally inches from the smoke.

Plaintiff also offered into evidence the Surgeon General's Report, "The Health Consequences of Involuntary Exposure to Tobacco Smoke." *See* Ex. P-11. In general, the Report provides that "[s]econdhand smoke is a major cause of disease, including lung cancer and coronary heart disease, in healthy non-smokers[]" and that exposure to secondhand smoke "poses significant risks for people with lung and heart disease." *Id.* at *Foreword*, *Preface*. It further concludes that there is "no risk-free level of exposure to secondhand smoke." *Id.* at 9. It also states that "[s]eparating smokers and nonsmokers in the same airspace is not effective, nor is air cleaning or a greater exchange of indoor with outdoor air." *Id.* at *Foreword*; 23. In admitting the exhibit into evidence, the court noted that other courts within the Fifth Circuit have taken judicial notice of the Report. *See Ware v. Morehouse Parish Det. Ctr.*, No. 06-2189, 2008 WL 5381898, at *5 (W.D. La. Nov. 25, 2008).

Based on the testimony and the specific facts of this case, the court concludes that society would consider the risk that Plaintiff complains of "to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling*, 509 U.S. at 36. The evidence reflects that Plaintiff's exposure to secondhand smoke at SMCI is not

merely "sporadic and fleeting" exposure that is unpleasant and causes him discomfort; rather, Plaintiff, a chronic "moderate" asthmatic patient, and is continuously exposed to secondhand smoke where 83% of the inmates smoke day and night throughout the zone. *See supra*, *Richardson*, 260 F.3d at 498. Accordingly, the court finds that Plaintiff has established by a preponderance of the evidence the first prong of *Helling*, that he "is being exposed to unreasonably high levels of ETS."[10] *Helling*, 509 U.S. at 35. In so ruling, the court places particular emphasis on several factors specifically applicable to this Plaintiff: his asthmatic condition and other reported respiratory problems as documented in his medical file;[11] his bunk location within six inches of the designated smoking area; and his documented efforts to bring this condition to the attention of prison officials, including the Defendants, without success or relief.[12]

Plaintiff must also show that the Defendants were subjectively deliberately indifferent to his situation. *Helling*, 509 U.S. at 36; *see also Richardson*, 260 F.3d at 498; *Callicutt*, 2002 WL 31114947, at *1. Defendant Ron King testified that Policy DOC-20-10, the controlling policy for Plaintiff's housing unit, permits smoking in designated areas within the housing unit. He testified that this policy complies with ACA standards. He stated that he is responsible for the overall operations and oversight of the enforcement of the rules at SMCI, and that to the best of

---

[10]By making this finding, the court does not make a blanket conclusion that all inmates housed at SMCI in Plaintiff's housing unit are exposed to unreasonably high levels of secondhand smoke. Rather, as with all secondhand smoke cases, this conclusion is based on the specific facts of this case, and the specific evidence presented by the parties.

[11]*See* Ex. P-12; P-3; D-4. The court notes that Plaintiff has refused chronic care for his asthma on two occasions. One refusal notes that Plaintiff refused chronic care because the treatment was inadequate. *See* D-4.

[12]*See* Exs. P-1; P-2; P-4; D-3.

his knowledge, the MCIAA and Policy 25-05-F, the smoke-free policy applicable to medical units, are being enforced. Mr. King did not testify as to whether Policy DOC-20-10 was being enforced. He also stated that it is "quite possible" that he received correspondence from Plaintiff asking to be housed in a smoke-free facility.

Officer Karen Causey testified that she has noticed "no smoking" signs in Plaintiff's housing units, but that she has witnessed inmates smoking outside the designated area. She testified that she would occasionally issue an RVR when someone was smoking outside the designated area, but she could not recall the last time she issued an RVR for such a violation.

Inmate Jeffrey Wansley testified that the designated smoking area was a "figment of someone's imagination" because both inmates and correctional officers smoked everywhere throughout the unit. He further testified that no one abided by the "no smoking" signs.

Based on the testimony and the evidence before the court, Plaintiff has established that Defendants were deliberately indifferent to his situation.[13] Defendants failed to offer any proof as to the actions taken to enforce Policy DOC-20-10, the controlling policy for Plaintiff's housing unit, and failed to offer any evidence that offenders who violated the smoking policy were punished. Indeed, Defendants failed to offer any evidence as to any action taken in response to Plaintiff's verbal and written complaints regarding the secondhand smoke.

---

[13]The court reiterates that this conclusion is fact specific to this case, and is based on the evidence and testimony presented to the court in this case. Indeed, this court has reached a different conclusion in other secondhand smoke cases filed by prisoners. For instance, in *Wansley v. King*, No. 2:07cv83-KS-MTP, the court found that the plaintiff failed to prove both prongs of *Helling*. *See* Report and Recommendation [92] and Order [94]. Likewise, in *White v. MDOC*, No. 2:07cv305-MTP, the court found that the plaintiff failed to prove that the defendants were deliberately indifferent to his situation, and dismissed his Eighth Amendment claim. *See* Judgment [69]. In both cases, both the plaintiffs and the defendants presented different evidence and testimony.

The evidence presented establishes that a policy, custom or practice[14] of SMCI and/or MDOC was the "moving force" behind the constitutional violation set forth above. *See supra, Monell*, 436 U.S. at 694. Further, the evidence reflects that SMCI and/or MDOC "maintain[ed] its official policy with deliberate indifference to a constitutionally protected right." *Lawson*, 286 F.3d at 264. As previously noted, constructive notice is adequate. *Id.*

However, Plaintiff has failed to establish that he is entitled to compensatory damages for the constitutional violation. While Plaintiff has asthma, he has failed to establish that his asthma was caused by his exposure to ETS at SMCI. *See Nettles v. Griffith*, 883 F. Supp. 136, 145 (E.D. Tex. 1995) (holding that in a Section 1983 action, a plaintiff "may be awarded only such damages as the evidence shows to have been proximately caused by the defendant's wrongful conduct"); *Richard v. City of Harahan*, 6 F. Supp. 2d 565, 575 (E.D. La. 1998) ("A plaintiff may be awarded only such damages as the evidence shows to have been caused by the defendant's wrongful conduct"); *see also Carey v. Piphus*, 435 U.S. 247, 263-65 (1978). The testimony establishes that Plaintiff was diagnosed with asthma in 1982, prior to his incarceration at SMCI. Moreover, Dr. Liddell testified that based on her review of Plaintiff's medical records, his asthma condition has not worsened during the time he has been housed at SMCI as opposed to other facilities. Accordingly, Plaintiff is not entitled to compensatory damages for his asthma.

Moreover, because Plaintiff has failed to establish a physical injury that was proximately caused by the Defendants' constitutional violation, he is not entitled to compensatory monetary damages for emotional and/or mental suffering related to the ETS exposure. *See Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005). The Prison Litigation Reform Act, to which this

---

[14]*See supra*, n.9.

action is subject, provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody *without a prior showing of physical injury.*" 42 U.S.C. 1997e(e) (emphasis added). However, Plaintiff is entitled to nominal damages against Defendant King for his constitutional violation.[15]  *See Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007) (holding that Section

---

[15]The court finds that the Plaintiff is entitled to nominal damages against Defendant King in his individual capacity.  The evidence summarized above reflects that Mr. King, who is responsible for the overall operations and oversight of the enforcement of the rules and policies at SMCI, was personally involved in the constitutional violation and/or that there is a sufficient causal connection between Mr. King's conduct and the constitutional violation.  *See supra*, *Thompkins*, 828 F.2d at 304.

Moreover, while Defendants raised the affirmative defense of qualified immunity in their Answer [22], the court finds that Mr. King is not entitled to qualified immunity based on the evidence presented at trial.  Generally, government officials who perform discretionary functions are entitled to qualified immunity that shields them from civil liability as long as their actions could reasonably be thought consistent with the rights they are alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *see also Richardson v. McKnight*, 521 U.S. 399, 407-08 (1997).  The Fifth Circuit employs a bifurcated analysis in evaluating whether an official is entitled to qualified immunity. *Evett v. DETNTFF*, 330 F.3d 681, 687 (5th Cir. 2003). First, the court must determine whether the plaintiff has alleged the violation of a clearly established constitutional right.  *Evett*, 330 F.3d at 681.  Second, the court must determine whether the actions of the government official were "objectively reasonable under the circumstances, such that a reasonably competent officer would not have known his actions violated then-existing clearly established law." *Id.*

Here, Plaintiff has alleged and established the violation of the Eighth Amendment, a clearly established constitutional right.  *See Jones v. Hearn*, 248 Fed. Appx. 568, 572 (5th Cir. 2007); *Jarvis v. Pearl River County Sheriff's Dep't*, No.1:05cv119-WJG-JMR, 2007 WL 4233121, at *7 (S.D. Miss. Nov. 27, 2007); *see also Helling*, 509 U.S. at 35.  Based on the evidence presented, the court cannot conclude that Mr. King's actions were objectively reasonable under the circumstances such that a reasonably competent officer would not have known his actions violated then-existing clearly established law.  Accordingly, Mr. King is not entitled to qualified immunity.

However, Plaintiff has failed to establish that Christopher Epps was personally involved in the alleged constitutional violation.  Rather, Plaintiff's proof against Mr. Epps related to his position as the MDOC Commissioner.  Because Plaintiff has failed to establish that Mr. Epps was personally involved in the alleged violation, Plaintiff's claim against Mr. Epps in his

1997e(e) does not bar recovery of nominal damages, even in the absence of a physical injury); *Williams v. Kaufman*, 352 F.3d 994, 1014 (5th Cir. 2003) ("The law is well-established in this Circuit that plaintiffs may recover nominal damages when their constitutional rights have been violated but they are unable to prove actual injury.").

Plaintiff has failed to prove he is entitled to punitive damages for the constitutional violation, as he has failed to establish that Defendants' conduct "[was] motivated by evil intent or demonstrate[d] reckless or callous indifference to a [his] constitutional rights." *Williams*, 352 F.3d at 1015 (internal citations and quotations omitted).[16] The "reckless or callous indifference" standard "requires recklessness in its subjective form, i.e. a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations." *Id.*

However, our inquiry does not end with monetary damages. The Eighth Amendment's proscription against deliberate indifference applies not only to current health problems, but also to the risk of future health problems. *See Helling*, 509 U.S. at 33-35. Plaintiff may obtain injunctive relief if he can show that exposure to secondhand smoke poses an unreasonable risk of serious damage to his future health. *See Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (citing *Helling*, 509 U.S. at 33-35) (stating that "an inmate may obtain injunctive relief under § 1983 based on exposure to environmental tobacco smoke in the absence of a present physical

_____

individual capacity, if any, should be dismissed. *See supra*, *Oliver*, 276 F.3d at 742 & n.6 (holding that it is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability"); *Thompkins*, 828 F.2d at 304; *Jolly*, 923 F. Supp. at 943; *see also Dedrick v. Richards*, 47 F.3d 425, 1995 WL 71163, at *1 (5th Cir. Jan. 25, 1995) (affirming dismissal of governor in her individual capacity since prisoner plaintiff failed to allege facts to establish she was personally involved in the alleged constitutional violation).

[16]The court notes that punitive damages are not barred by Section 1997e(e), despite the absence of a physical injury. *See Williams*, 352 F.3d at 1015.

injury"); *Kennedy v. Gusman*, No. 06-5274, 2007 WL 1302554, at *6 (W.D. La. May 2, 2007).

Plaintiff has established that his exposure to secondhand smoke poses an unreasonable risk of serious damage to his future health.[17] In order to obtain permanent injunctive relief, Plaintiff must demonstrate "(1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *See Ebay, Inc. v. Mercexchange, LLC*, 547 U.S. 388, 391 (2006); *ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008). Plaintiff has demonstrated an irreparable injury: an unreasonable risk of serious damage to his future health by his current exposure to secondhand smoke at SMCI. Second, the remedies at law are inadequate and/or unavailable, as Plaintiff is only entitled to injunctive relief for an unreasonable risk of serious damage to his future health. *See Herman*, 238 F.3d at 664. Regarding the third and fourth elements, the court finds that equitable relief is warranted, and the public would not be disserved by his transfer to

----

[17]This case is distinguishable from other prisoner secondhand smoke exposure cases previously pending before the court. For example, in *Wansley v. King*, No. 2:07cv83-KS-MTP, the court found that since the plaintiff had been transferred to another facility, his demand for injunctive relief for defendants to create a no-smoking zone at SMCI was moot. Plaintiff testified that at his current facility, the inmates still smoke, but he could cope with it. Based on this testimony, the court found that the plaintiff was not currently being exposed to levels of secondhand smoke which posed an unreasonable risk of serious damage to his future health entitling him to injunctive relief. *See* Report and Recommendation [92] and Order [94]. Likewise, in *White v. MDOC*, No. 2:07cv305-MTP, the plaintiff was no longer housed at SMCI. The court found that plaintiff was not entitled to injunctive relief because, *inter alia*, he failed to present any evidence that his current exposure to secondhand smoke posed an unreasonable risk to his future health.

another facility.[18]  Accordingly, Plaintiff is entitled to injunctive relief against Defendants in

their official capacities.[19]

----

[18]The court is loathe to tell prison officials how to operate their prison facilities or to decide where prisoners are housed.  *See Humphrey v. Layton*, 58 F.3d 636, 1995 WL 371021, at *1 n.5 (5th Cir. Jun. 1, 1995) ("Needless to say, federal courts are very reluctant to interfere in any aspect of prison administration; the decision to transfer a prisoner to a different prison is best left in the hands of the prison administrator.");  *Adkins v. Kasper*, 36 F.3d 89, 1994 WL 523658, at *2 (5th Cir. Sept. 6, 1994) (stating that the day-to-day operation of prison facilities is best left to the prison officials).

[19]The court recognizes that generally, the State and its officials acting in their official capacities are not considered "persons" withing the meaning of Section 1983, and therefore, are not amenable to suit.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Scott v. MDOC*, No. 2:05cv2159-KS-JMR, 2006 WL 1666258, at *2 (S.D. Miss. June 12, 2006). However, the Supreme Court has recognized an exception for claims for injunctive relief.  *See Will*, 491 U.S. at 71 n.10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'") (internal citations and quotations omitted).

The court also recognizes that Defendants raised Eleventh Amendment immunity as an affirmative defense in their answer.  *See* Answer [22].  Generally, the Eleventh Amendment "bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity."  *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 336 (5th Cir. 2002) (citing U.S. Const. amend. XI).  Eleventh Amendment immunity "extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state."  *Perez*, 307 F.3d at 336.  Likewise, such immunity applies to state officers and employees sued in their official capacity.  *See Brady v. Michelin Reifenwerke*, 613 F. Supp. 1076, 1079-80 (S.D. Miss. 1985).

However, assuming the Eleventh Amendment immunity applies to Defendants in their official capacities, such sovereign immunity does not apply to prospective injunctive relief.  The doctrine of *Ex parte Young* is an exception to the general prohibition of the Eleventh Amendment, which allows suits for prospective injunctive or declaratory relief against state officials in their official capacity.  *See Verizon Maryland, Inc. v. Public Serv. Comm'n*, 535 U.S. 635, 645 (2002) (holding that the *Ex parte Young* exception applied to the Eleventh Amendment bar for claims for injunctive relief against defendants in their official capacities); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-06 (1984); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (stating that Eleventh Amendment immunity generally precludes actions against state officials in their official capacity, subject to the *Ex parte Young* exception).

In order to grant the most narrowly-tailored and appropriate form of injunctive relief available, the court directed the parties to file post-trial submissions setting forth their respective positions on the form and scope of any injunctive relief to be awarded, assuming Plaintiff established the necessary elements. *See* Order [108]. The Defendants suggested that Plaintiff be moved from the first row of bunks, where he is currently housed, to the back row of the unit, which would move him to the most remote row of bunk beds from the designated smoking area. Alternatively, Defendants suggested that Plaintiff be moved to Unit 32 at the Mississippi State Penitentiary at Parchman, which is a maximum security unit that has heightened housing rules due to security concerns, which would include no smoking by inmates housed in these segregated housing units. *See* Response [109].

Plaintiff suggested that SMCI create a building or zone that is smoke-free. Alternatively, he suggested that he be moved back to Unit 31 at Parchman, where he claims he was housed in the past by the medical department due to his pulmonary condition and his desire to not be housed with smokers.

Based on the options presented by the parties the court finds that a transfer of Plaintiff to Unit 32 at Parchman, which Defendants represent is a non-smoking unit, or transfer to another non-smoking unit within the MDOC is the best option. Defendants have represented that Plaintiff is not presently eligible for housing in any of the medical units in the MDOC and, therefore, a transfer to Unit 31 at Parchman, apparently a medical unit, is not available. Surely, a transfer to another bunk within the same unit where 83 out of 100 inmates smoke, ventilation is sporadic, and enforcement of the smoking policies is suspect will not provide adequate relief.

**State Law Claims**

Plaintiff alleges that Defendants violated the MCIAA, which generally prohibits smoking inside "government buildings." *See* Miss. Code Ann. § 29-5-161; Ex. P-5. However, the MCIAA excludes from coverage "any space in a government building used by law enforcement officers." *See* Miss. Code Ann. § 29-5-161(1)(b). As previously discussed, Mr. King testified that he, as SMCI Superintendent, is a member of the law enforcement community, and that the MDOC is a branch of law enforcement. This testimony is unrebutted. Accordingly, the court finds that the statute is not applicable to the facility at issue and, therefore, this claim is dismissed with prejudice.

<u>CONCLUSION</u>

For the reasons stated above, Plaintiff is entitled to injunctive relief and nominal damages for his Eighth Amendment claim against Defendants for exposure to unreasonable levels of secondhand smoke. Plaintiff's claim that Defendants violated the MCIAA is dismissed with prejudice. Plaintiff has failed to prove he is entitled to any further relief.

A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

IT IS THEREFORE ORDERED:

1. Plaintiff's claim for violation of the MCIAA is dismissed with prejudice;

2. Plaintiff's claim against Mr. Epps in his individual capacity is dismissed with prejudice;

3. Plaintiff is entitled to injunctive relief against Defendants Epps and King in their

official capacities (the MDOC) for his Eighth Amendment claim for exposure to unreasonable levels of secondhand smoke;

4.      Defendants (the MDOC) are ordered to transfer Plaintiff to Unit 32 at Parchman, or to another non-smoking unit within the MDOC, within thirty (30) days. Defendants shall bear the cost of the transfer;

5.      Plaintiff is entitled to nominal damages in the amount of $1.00 against Defendant Ron King in his individual capacity;

SO ORDERED this the 24th day of March, 2009.

s/ Michael T. Parker
United States Magistrate Judge